57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Ernest M. SOLOMON and Arlans Agency, Inc., Plaintiffs-Appellants,
v.
Leon E. HANK, a classified employee in the service of the
Executive Branch of Government, Defendant-Appellee.
 No. 94-1311.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1995.
 
 Before: MILBURN, RYAN and GODBOLD*, Circuit Judges.
 GODBOLD, Senior Circuit Judge.
 
 
 1
 Plaintiffs Ernest M. Solomon and Arlans Agency, Inc. appeal from summary judgment for defendant Leon E. Hank in this 42 U.S.C. Sec. 1983 case. Plaintiffs charge that Hank leaked confidential information about Cadillac Insurance Co. to various newspapers, causing Cadillac to be placed in a conservatorship, which deprived them of their due process rights. We affirm the district court's judgment.
 
 
 2
 Solomon is the sole shareholder of Arlans, a licensed insurance agency in the State of Michigan, and Arlans is the sole shareholder of Cadillac. Cadillac sold insurance policies in 17 states with about 25 percent of its business in Michigan.
 
 
 3
 The Michigan Insurance Bureau began an examination of Cadillac in 1989. Hank, as director of the Financial Analysis and Examination Division of the Bureau, supervised the examination. Hank and his staff became convinced that Cadillac was insolvent, and Hank recommended that the state insurance commissioner petition the attorney general for an order of conservatorship for Cadillac. No action was taken, and Hank sent several bluntly-worded memoranda to the deputy insurance commissioner warning him of the consequences to the Bureau and to the public if swift action was not taken. Hank also suggested that the delay in taking action against Cadillac was politically motivated.
 
 
 4
 After a preliminary examination report was issued Cadillac and its attorneys began to work with the Bureau to develop a business plan to infuse Cadillac with sufficient assets to allay the examiners' concerns, and Solomon sought outside investors for Cadillac. Memoranda written by Hank and other staff members involved in the Cadillac examination were leaked to various newspapers in Michigan, which printed excerpts detailing the precarious position of Cadillac, including suspicions that Solomon had embezzled millions of dollars from Cadillac. Michigan Compiled Laws Sec. 500.222(4) then read in relevant part:
 
 
 5
 Such deputy or examiners shall make a full and true report, and furnish the insurer a copy thereof, of every examination which shall comprise only facts appearing on the books, records, or documents of such insurer or ascertained from sworn testimony of its officers or agents or other persons examined under oath, concerning its affairs and such conclusions and recommendations as may be reasonably warranted from such facts so disclosed. The commissioner shall grant a hearing to any insurer examined, upon its request, before filing such report and may withhold any such record from public inspection for such time as he or she may deem proper. The commissioner may, if he or she deems it for the interest of the public to do so, after such hearing, publish any such report or the result of any such examination as contained therein, in one or more newspapers of general circulation in the state.
 
 
 6
 Section 222 has been interpreted to require that, absent a hearing, examination materials be kept confidential. The Bureau has never determined how the newspapers obtained the confidential information.
 
 
 7
 The day after the newspapers broke the story, the Michigan attorney general filed a conservatorship petition against Cadillac in state court and the court granted the conservatorship. Plaintiffs claim that after the institution of the conservatorship outside investors were no longer willing to deal with them and that many of Cadillac's agents stopped doing business with the company. Cadillac was placed in liquidation on January 2, 1990.[1]
 
 
 8
 Plaintiffs sued Hank in his personal capacity in Michigan state court, asserting that Hank had deprived them of property or liberty interests without due process of law in violation of 42 U.S.C. Sec. 1983. Various state law claims also were asserted. Plaintiffs contend that disclosure of the examination materials violated Sec. 222 and amounted to a taking of their liberty or property interests in the confidentiality of the information in that the disclosure, and political pressure resulting therefrom, motivated the attorney general to pursue the conservatorship action, and that the information was inaccurate and resulted in irreparable damage to efforts to rehabilitate Cadillac.
 
 
 9
 Hank removed to federal court, which remanded the state law claims to state court. The district court granted defendant's motion for summary judgment, correctly holding that: (1) the evidence did not show that Hank was implicitly authorized to disclose the information or had a custom or policy of making such disclosures; (2) the evidence did not show that the disclosure was predictable; and (3) the plaintiffs failed to allege or present any evidence demonstrating the inadequacy of post-deprivation procedures.[2]
 
 
 10
 The evidence reveals only an unauthorized and random disclosure. See Hudson v. Palmer, 468 U.S. 517 (1984). Section 222 set out an established procedure for releasing information, but the determination under that section is to be by the commissioner, not Hank, and the evidence did not show that Hank was authorized to act for the commissioner. The mere fact that the dissemination of the memoranda violated Sec. 222 strongly suggests that the action was random and unauthorized.
 
 
 11
 Nor was the release predictable under Zinermon v. Burch, 494 U.S. 113 (1990).[3] In that case the officials with the power to effect a deprivation were among the defendants. In this case, under Sec. 222, the official with the power is the commissioner, not the defendant. The evidence did not show that Hank had a custom or policy of disclosing confidential information that would permit an inference that disclosure by him was either predictable or authorized. Indeed, Solomon testified by deposition that he did not know if Hank had previously released confidential information. Furthermore, the state, not the employee, must be able to predict the deprivation. Hudson, 468 U.S. at 534.
 
 
 12
 Finally, plaintiffs failed to allege or present evidence showing that post-deprivation remedies were inadequate. See Parratt v. Taylor, 451 U.S. 527 (1981). If the state cannot predict when a deprivation will occur because of random and unauthorized acts, an adequate post-deprivation hearing will satisfy due process. Id. at 543.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 In 1991 Arlans sought an injunction against the Bureau to prevent the Bureau or Hank from releasing any new examination materials in response to discovery requests in pending cases in Illinois and the Eastern District of Michigan. The court granted a permanent injunction prohibiting the Bureau from releasing such materials, pursuant to an amendment to the insurance code. The amendment specified new, mandatory exclusions from publication for certain Bureau materials. These new provisions were the basis for the injunction. They were not in effect at the time the examination memoranda at issue in this case were published
 
 
 [2]
 The district court did not decide whether Hank was responsible for the leak of the memoranda to the newspapers
 
 
 [3]
 In Zinermon the plaintiff was committed "voluntarily" to a state mental hospital for five months. The Supreme Court noted that the state had procedures established for voluntarily committing patients and involuntarily committing patients. However, the state did not have a procedure established nor personnel appointed to determine whether a person was competent enough to commit himself to the hospital voluntarily. The plaintiff, it was conceded, was psychotic at the time that he "voluntarily" committed himself following the procedures for voluntary commitment. The Court held that while the voluntary commitment of an incompetent patient is not authorized per se, it was not "unauthorized" as that word is used in Hudson and Parratt v. Taylor, 451 U.S. 527 (1981). Zinermon, 494 U.S. at 138. Furthermore, it was clear that the deprivation would occur, if at all, at the time of the signing of the papers for the commitment, thus the action leading to the deprivation was predicable. Id. at 136